IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOHNNIE SHAFFER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-070 |
| | ) | |
| LT. KYLE MADDOX, CO I, and, | ) | |
| JOHN CREAMER, E-2 Floor Officer, CO I, | ) | |
| | ) | |
| Defendants. | ) | |

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Autry State Prison in Pelham, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events that allegedly occurred at Telfair State Prison ("TSP") in Helena, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is before the Court on Defendants' pre-answer motion to dismiss. (Doc. no. 27.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** and that this case continue against both Defendants only as to the individual capacity Eighth Amendment claim for monetary damages based on the alleged use of excessive force.

**I. BACKGROUND**

Plaintiff originally named five Defendants in his complaint. However, because he is proceeding IFP, the Court screened his complaint and recommended the dismissal of three Defendants. (See doc. no. 10.) United States District Judge Dudley H. Bowen, Jr., adopted the

recommendation as the opinion of the Court, leaving only Defendants Kyle Maddox and John Creamer, both correctional officers at TSP, in the case.[1] (See doc. no. 14.) The Court allowed Plaintiff to proceed with two Eighth Amendment claims against Defendants Maddox and Creamer, one for use of excessive force and one for deliberate indifference to a serious medical need. (See doc. no. 9.) With respect to these two Defendants, Plaintiff alleges the following facts.

On March 15, 2014, Defendants Maddox and Creamer beat Plaintiff while he was handcuffed and then dragged him out of his cell, all the while calling Plaintiff derogatory names. (Doc. no. 1, p. 5.) Fearful of the two officers because of the beating he was receiving, Plaintiff attempted to resist leaving his cell, which resulted in the officers kicking at Plaintiff to dislodge him from his cell. (Id.) In the struggle, Plaintiff collided with Defendant Maddox, causing a can of mace to explode over Plaintiff. (Id.) Plaintiff was not allowed to shower off the mace or receive medical attention for the injuries he received during the beating. (Id.) Plaintiff seeks monetary damages, a written apology, and injunctive relief in the form of demotion of Defendant Maddox and termination of Defendant Creamer. (Id. at 6.) Plaintiff does not state in his complaint whether he is suing Defendants in their individual or official capacities, but in response to the motion to dismiss, Plaintiff clarifies that he seeks monetary damages from Defendants in their individual capacities and injunctive relief of demotion of Defendant Maddox and termination of Defendant Creamer in their official capacities. (Doc. no. 32, p. 2 and Ex. 1.)

As to the issue of exhaustion of administrative remedies, Plaintiff alleges that he "filed informal grievance [that] was closed due to investigation unit taking over." (Doc. no. 1, p. 3.) Once Defendants moved to dismiss the deliberate indifference claim based on an alleged failure to

---

[1]The Court **DIRECTS** the Clerk to add Defendant Maddox's first name to the docket.

exhaust, Plaintiff responded with the assertion that he had two active grievances at the time of the events in question, and because the grievance procedure limits a prisoner to two active grievances, he was unable to grieve the issue of deliberate indifference. (Doc. no. 32, pp. 1-2.)

Defendants have produced the affidavit of Deondrick Clemons, the Grievance Coordinator at TSP, who states that in March 2014, Plaintiff filed only one grievance related to an alleged use of force, Grievance No. 169381, and that grievance did not mention or complain about an alleged denial of medical treatment for any injury resulting from the use of force. (Doc. no. 27, Clemons Aff., ¶ 15 and Exs. 3, 4.) Moreover, the grievance information provided by Defendants does not show Plaintiff had any other grievance pending at the time he filed Grievance No. 169381 on March 15, 2014. (Id. at Ex. 3, p. 1.)

## II. DISCUSSION

### A. Defendants' Motion to Dismiss Should Be Granted as to the Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need Because Plaintiff Failed to Exhaust His Administrative Remedies.

#### 1. The Legal Framework

The Eleventh Circuit has created a two-step analysis for motions to dismiss based on failure to exhaust administrative remedies. First, the Court looks to the factual allegations made by both parties, taking Plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust, Defendants' motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendants bearing the burden of proving that Plaintiff has failed to exhaust. Id. Based on its

3

findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### 2. The Administrative Grievance Procedure

Because the date of the alleged incident is March 15, 2014, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. (See doc. no. 27, Clemons Aff., Ex. 1 (hereinafter "SOP IIB05-0001").) Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. An inmate may file a grievance "about any condition, policy, procedure, or action or lack thereof that affects the offender personally." Id. § VI(B)(1). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievances to the Grievance Coordinator, they will screen it in order to determine whether to accept it or

5

recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or their designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7). However, if a prisoner files a grievance concerning physical force involving non-compliance with Department policies, "such actions automatically end the grievance process. These grievances are automatically forwarded . . . to Internal Investigation Unit . . . for review and whatever action is deemed appropriate." Id. § VI(D)(8).

The inmate then has seven calendar days from the date he receives the Warden's response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

### 3. Plaintiff's Failure to Exhaust His Deliberate Indifference Claim

Here, Plaintiff's claim should be dismissed because Defendants have met their burden of proving Plaintiff failed to exhaust his available administrative remedies by producing Plaintiff's

grievance history, which establishes he did not grieve the alleged denial of medical treatment for any injury resulting from the use of force. (Doc. no. 27, Clemons Aff., ¶¶ 14, 15 and Exs. 3, 4.) Because Plaintiff did not exhaust his administrative remedies with respect to his claim for deliberate indifference to a serious medical need prior to initiating this lawsuit, that claim must be dismissed. Poole, 312 F. App'x at 166; see also Higginbottom, 223 F.3d at 1261.

First, Plaintiff alleged in his complaint that his grievance was closed when it was forwarded to the "Investigation Unit." (Doc. no. 1, p. 3.) This is consistent with the portion of the applicable Standard Operating Procedure that requires grievances involving physical force to be forwarded to the Internal Investigation Unit. SOP IIB05-0001 § VI(D)(8). It is also consistent with the response to Grievance No. 169381, which forwarded the use of force allegations to the Internal Investigation Unit and closed the grievance. (Doc. no. 27, Clemons Aff., Ex. 4.) Notably, Grievance No. 169381 does not mention or complain about the alleged denial of medical treatment after the use of force. (Id.)

Then, when Defendants moved to dismiss the deliberate indifference claim based on a failure to exhaust, Plaintiff opposed the motion to dismiss with an unsubstantiated assertion that he had two active grievances pending at the time which prevented him from grieving his deliberate indifference claim. (See doc. no. 32.) However, Defendants have produced a copy of Plaintiff's grievance history showing Plaintiff had no other grievance pending at the time he filed Grievance No. 169381. (Clemons Aff., Ex. 3, p. 1.) Plaintiff has produced nothing to rebut Defendants' documentation on this point.

The Court finds that the grievance process at TSP was available to Plaintiff, but Plaintiff did not grieve the issue of deliberate indifference to a serious medical need. Because Plaintiff failed to exhaust his deliberate indifference claim, it should be dismissed without prejudice.

Bryant, 530 F.3d at 1379; Logue v. Chatham Cnty. Det. Ctr., 152 F. App'x 781, 783 (11th Cir. 2005) (finding prisoner who sued alleging violations of rights to equal protection and access to the courts based on jail officials' refusal to copy documents did not exhaust equal protection claim when he filed a grievance about non-compliance with copying policy but did not mention race).

> **B.** **Plaintiff May Not Sue Defendants in Their Official Capacities for Monetary Damages or Injunctive Relief.**

> **1.** **The Legal Framework**

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014). The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). The Court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. With these principles in mind, the Court turns its attention to the remaining arguments in the motion to dismiss that do not relate to the exhaustion issue.

> **2.** **Analysis**

The only other bases for dismissal argued by Defendants relate to purely legal issues as to the type of relief sought by Plaintiff for all of his claims. In particular, Plaintiff seeks an award

of monetary damages and injunctive relief against each Defendant, but he does not specify in his complaint whether he is suing Defendants in their official or individual capacities. (See doc. no. 1.) Defendants argue that any official capacity claims for monetary damages are barred and that the complaint fails to state a claim for injunctive relief. In response to the motion to dismiss, Plaintiff clarifies that he seeks monetary damages from Defendants in their individual capacities and injunctive relief of demotion of Defendant Maddox and termination of Defendant Creamer in their official capacities. (Doc. no. 32, p. 2 and Ex. 1.)

The Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Likewise, the Eleventh Amendment bars a § 1983 official capacity claim for injunctive relief. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984) ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.") (citing Cory v. White, 457 U.S. 85, 91 (1982)); see also Smith v. Dekalb County Jail, No. 1:13-cv-1629, 2014 WL 129509, at * 3 (N.D. Ga. Jan. 14, 2014) ("[T]he Eleventh Amendment bars a § 1983 federal action against the State of Georgia, whether for damages or injunctive relief." (citations omitted)). Plaintiff's claims for injunctive relief are also barred because he is not "seeking prospective equitable relief to end continuing violations of federal law." McClendon v. Georgia Dep't of Cmty. Health, 261 F.3d 1252, 1256 (11th Cir. 2001) (citation omitted). Indeed, Plaintiff's request for injunctive relief against Defendants in any capacity is moot to the extent he is no longer incarcerated at TSP and therefore is no longer subject to interaction with Defendants Maddox and Creamer in any manner. See McKinnon v. Talladega Cnty., 745 F.2d 1360, 1363 (11th Cir. 1984).

Therefore, Plaintiff's official capacity claims for monetary and injunctive relief fail as a matter of law and should be dismissed from the case. Defendants have not moved for dismissal of Plaintiff's individual capacity claim for monetary relief based on the alleged use of excessive force, and therefore that claim remains as to both Defendants.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** and that this case continue against both Defendants only as to the individual capacity Eighth Amendment claim for monetary damages based on the alleged use of excessive force. The Court further **REPORTS** and **RECOMMENDS** that within seven days of the presiding District Judge's final order on the motion to dismiss, Defendants must file an answer to any claim(s) remaining in the case, and the stay of discovery entered on January 22, 2015, (doc. no. 31), should be lifted.

SO REPORTED and RECOMMENDED this 26th day of March, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA