IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JOHNNIE SHAFFER, JR.,           )
                                )
            Plaintiff,          )
                                )
      v.                        )        CV 314-070
                                )
LT. KYLE MADDOX, CO I, and      )
JOHN CREAMER, E-2 Floor Officer, CO I, )
                                )
            Defendants.         )
                   _____

**O R D E R**
                   _____

In a simultaneously filed Report and Recommendation, ("R&R"), the Court recommends Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted. Plaintiff has also filed seven other motions, which generally concern administrative and procedural issues, as well as issues related to submission of materials in support of the summary judgment briefing. Below, the Court addresses each motion in turn.

I.    **Administrative and Procedural Issues**

Plaintiff filed a "Motion to Refile if Filed Documents Missing from Docket List Not Filed: By Plaintiff: Pertinent." (Doc. no. 76.) In this motion, Plaintiff asks for verification certain documents he mailed to the Court were filed, and if not, he requests permission to re-file them. Both items identified by Defendant are already on the docket. The "Declaration of Content of Evidence: DVD Part of Document Number 52-4 Page 5," can be found at

docket entry 71, pages two through six. The "Notice of Rule 56(h) – Affidavit Submitted In Bad Faith," can be found at docket entry 66, pages five through seven. As the documents are already part of the record, there is no need to re-file them, and the Court **DIRECTS** the **CLERK** to **TERMINATE** this motion from the motions report. (Doc. no. 76.)

Plaintiff also filed a "Request of Assistance Sui Generis," in which he asks the Court to provide him with a free copy of the entirety of the Court's Local Rules and a complete copy of the Federal Rules of Civil Procedure. (Doc. no. 86.) Plaintiff's status as an *in forma pauperis* litigant does not entitle him to free copies. <u>Wanninger v. Davenport</u>, 697 F.2d 992, 994 (11th Cir. 1983) ("A prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine . . . ." (citation omitted)). Plaintiff identifies no specific Rule that he needs, let alone a reason why he needs a copy of every single Local Rule or Federal Rule of Civil Procedure. The Eleventh Circuit "has never held that a prisoner's right of access to the courts entitles a prisoner-plaintiff, even one proceeding *in forma pauperis*, to free copies of court documents." <u>Jackson v. Fla. Dep't of Fin. Servs.</u>, 479 F. App'x 289, 292-93 (11th Cir. 2012). Accordingly, the Court **DENIES** this motion. (Doc. no. 86.)

Plaintiff filed two motions complaining that his motions have not been ruled upon quickly enough and requesting the Court grant them immediately. The Court addresses the motions of all litigants who appear before it as the normal course of business allows. With the entry of this Order and simultaneously entered R&R, all motions filed to date in this case have been addressed. Thus, the Court **DENIES AS MOOT** Plaintiff's motions for an immediate favorable ruling. (Doc. nos. 88, 91.)

When Plaintiff moved to Macon State Prison from Valdosta State Prison, he filed a motion asking the Court to direct prison officials at his new institution to provide him all manner of legal materials, writing materials, and prison regulations. (Doc. no. 89.) In a filing dated four days later, Plaintiff states all of his legal materials had been returned to him, and therefore, he no longer needed the Court's assistance. (Doc. no. 90.) If Plaintiff has problems with his conditions of confinement in his prison located in the Middle District of Georgia, he must pursue any such claims in a separate case filed in the Middle District. In any event, as Plaintiff states he received the materials he originally sought, the Court **DENIES AS MOOT** this motion. (Doc. no. 89.)

## II.    Summary Judgment Materials

Plaintiff also made multiple filings related to summary judgment materials filed by Defendants. As described above some of those filings were made as declarations or notices rather than motions. The Court first addresses Plaintiff's request to communicate with a fellow inmate in an effort to obtain an affidavit in support of his claims and then turns to the multiple allegations of misconduct by Defendants.

### A.    Request to Contact Former Cellmate

The Court denied without prejudice Plaintiff's first request to correspond with inmate Larry Bowling because Plaintiff had not adequately explained why he needed an affidavit from Mr. Bowling to respond to Defendants' motion for summary judgment. (See doc. no. 67.) Mr. Bowling was first identified as a person related to Plaintiff's claim concerning assignment to a bottom bunk because Mr. Bowling was Plaintiff's cellmate who also had a bottom bunk profile. (See doc. no. 12, pp. 7-9.) United States District Judge Dudley H.

Bowen, Jr., dismissed the bottom bunk profile claim on November 12, 2014. (Doc. no. 14.) Likewise, Judge Bowen dismissed Plaintiff's claim that he had been denied medical care after the March 15, 2014 escort concluded and he had been placed in a cell with Mr. Bowling. (See doc. nos. 35, 39.) Plaintiff did not mention Mr. Bowling during his deposition taken on September 8, 2015. (See doc. no. 52, Ex. A, Shaffer Dep.)

In his first motion seeking to correspond with Mr. Bowling, Plaintiff stated that Mr. Bowling "can verify" Defendants grabbed Plaintiff's arms and began to drag him to an "unknown location with intent of malice to harm me." (Doc. no. 60, p. 1.) Of course, there is no question that Defendants Maddox and Creamer were escorting Plaintiff during the events forming the basis for this lawsuit, Plaintiff has already provided deposition testimony and submitted his own affidavit attesting he was grabbed and dragged when Defendants refused to put him in a cell and instead threatened to take him to an unknown location to beat him, and there is a DVD of the events in question (doc. no. 52-4, Maddox Aff., Attach. A). All of this evidence is discussed in detail in the simultaneously issued R&R addressing the cross motions for summary judgment, including the Court's assumption for purposes of summary judgment that Plaintiff was fearful of threats that may have been spoken to him.

When given the opportunity to re-urge his motion to correspond with Mr. Bowling to *specifically* explain what information Mr. Bowling would be expected to provide and its relevance to the pending motion for summary judgment on the sole, remaining excessive force claim, Plaintiff simply re-iterated issues that he has already attested to. First, despite the Court's repeated reminders that his dismissed deliberate indifference claims regarding the medical treatment he did or did not receive after the escort have been dismissed and are not

relevant to the remaining claim, Plaintiff asserts Mr. Bowling can verify how long and under what circumstances he remained in his cell without treatment. There is no need to present evidence on a claim that is not part of the case.

Second, Plaintiff states Mr. Bowling can verify the extent of Plaintiff's injuries, but Plaintiff himself already provided sworn deposition and affidavit testimony about the bruises on his legs, as well as "not deep" scratches, back pain, and joint soreness. (Shaffer Dep. 10, 26-36, 87; doc. no. 12, pp. 8-9.) As set forth in the simultaneously entered R&R, the Court has presumed the existence of these injuries, but when considered as part of the multi-factor analysis of an excessive force claim, they do not defeat Defendants' summary judgment motion.

Because Plaintiff suggests only that Mr. Bowling would provide information about dismissed claims and corroborate sworn testimony already in the record that the Court has presumed to be true for the sake of its summary judgment analysis, there is no basis for an order from the Court compelling prison officials to approve altering their security measures and allowing Plaintiff to contact an inmate at another institution. Accordingly, the Court **DENIES** the motion. (Doc. no. 81.)

> **B.** **Allegations of Misconduct in Preparation and Submission of Summary Judgment Materials**

Lastly, Plaintiff continues with his pattern and practice in this case to attribute bad faith and/or misconduct to Defendants and their counsel based on his disagreement with their interpretation of the facts of this case. In other words, Plaintiff wholeheartedly believes he is correct about every aspect of this case and any contradictory evidence or interpretation offered by the defense should be sanctioned as misconduct. That is not how court

proceedings work.

For example, in a "Notice of Rule 56(h) – Affidavit Submitted in Bad Faith," Plaintiff complains Defendant Maddox perjured himself when he submitted an affidavit asserting Plaintiff was seen by medical personnel on the same day as the escort forming the basis of this litigation occurred, but also attached a medical report to the affidavit that was completed on March 19, 2014.  (Doc. no. 66, p. 6 (citing doc. nos. 52-4, 61).)  Plaintiff re-iterates this accusation in his "Request for Referral by the Court for Misconduct."  (Doc. no. 87.) Defendant Maddox's affidavit states,

> Inmate Shaffer also was not injured or denied medical attention in this incident and instead he was checked by medical personnel following the incident and both the medical record and also his own written statement which are made a part of Incident Report # 146115 show that he suffered no injury in the incident.

(Maddox Aff. ¶ 7.)

The attached medical report is clearly dated March 19, 2014, a date "following the incident" on March 15th, and the report states Plaintiff suffered no injury.  Plaintiff's statement asserts *he* caused a can of mace to explode, but Defendant Maddox "got [him] help and cleaned and returned me to 218 safely."  Id., Ex. B, pp. 5-9.  Although not a model of specificity, the affidavit does not misrepresent the facts, and any potential confusion is easily resolved because the actual documentation is available for the Court's review.  There is no basis for concluding the affidavit was submitted in bad faith and for purposes of delay such that the imposition of discretionary sanctions would be warranted.  See United States v. Nguyen, 655 F. Supp.2d 1203, 1210 (S.D. Ala. 2009) (describing circumstances warranting imposition of sanctions, which included offering affidavit in contradiction to prior deposition

testimony after warning that such action would be considered as offering affidavit in bad faith).

Plaintiff also seeks sanctions because defense counsel corrected his omission of submitting a signed affidavit without a notary signature.  (Doc. no. 87, p. 1 (citing doc. no. 27-2, p. 5, Aff. of Deondrick Clemons).)  These filings were made over a year prior to the instant allegations of misconduct and *after* dismissal of the issue for which the challenged document was used.  Plaintiff purports to know, without offering any basis for his knowledge, that because counsel submitted only the corrected signature page bearing the notary's signature and stamp two days after the original affidavit, counsel caused the notary to "commit perjury in placing her signature on a document that was not signed before her, and with only one of five pages given to her to sign approximately one week after it had been signed and filed with the Court."  (Id. at 2.)  Plaintiff has no way of knowing what counsel gave the notary when, let alone any basis for suggesting counsel caused the notary to do something improper.  Nor does he suggest, let alone offer any proof, that something changed in the affidavit bearing the same affiant's signature.

Plaintiff also claims, again without verification, that Defendants did not produce all available video evidence of the March 15, 2014 escort.  (Doc. no. 71, "Declaration of Content of Evidence: DVD Part of Document Number 52-4 Page 5," pp. 2-7.)  However, the record does not reflect that Plaintiff filed any timely discovery motions on this topic.  In fact, according to Defendants, Plaintiff served no discovery on Defendants nor to counsel's knowledge made any discovery efforts during the nearly five-month long discovery period.  (Doc. no. 68, p. 2.)  The time for raising discovery disputes has long since passed.

Although the record contains Plaintiff's verification of viewing the DVD recording of the March 15th escort, (doc. no. 68-3), Plaintiff also complains of the circumstances under which he viewed the DVD that was submitted in support of Defendants' motion for summary judgment. Yet Plaintiff maintains he was able to view it well enough to argue the video "memicks [sic] the Plaintiff's contention of what happened in agreeance [sic] with his Affidavits and the testimony in the Deposition held on September 8, 2015." (Doc. no. 62, p. 9.) Moreover, Defendants offered Plaintiff more than one opportunity to view the DVD. (Doc. no. 74, p. 2.)

In sum, in the absence of any basis for attributing bad faith to Defendants or defense counsel in the manner in which this litigation has been conducted, let alone verifiable evidence to support such claims, the Court **DENIES** Plaintiff's request "to make a referral for investigation of misconduct," (doc. no. 87), or otherwise sanction the defense for its litigation conduct.

SO ORDERED this 27th day of July, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA