IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOHNNIE SHAFFER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-070 |
| | ) | |
| LT. KYLE MADDOX, CO I, and | ) | |
| JOHN CREAMER, E-2 Floor Officer, CO I, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Macon State Prison in Oglethorpe, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case concerning events at Telfair State Prison ("TSP"). Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 48), Defendants' motion for summary judgment be **GRANTED** (doc. no. 52), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

## I. PROCEDURAL BACKGROUND

Plaintiff originally named five Defendants in his complaint. However, because he is proceeding IFP, the Court screened his complaint and recommended the dismissal of three Defendants. (See doc. no. 10.) United States District Judge Dudley H. Bowen, Jr., adopted the recommendation as the opinion of the Court, leaving only Defendants Kyle Maddox and John

Creamer, both correctional officers at TSP during the relevant time period, in the case. (See doc. no. 14.) The Court allowed Plaintiff to proceed with two Eighth Amendment claims against Defendants Maddox and Creamer, one for use of excessive force and one for deliberate indifference to a serious medical need. (See doc. no. 9.) The Court then granted Defendants' motion to dismiss the deliberate indifference claim because Plaintiff had failed to exhaust his administrative remedies. (Doc. nos. 27, 35, 39.)

Thus, the only issue before the Court in these summary judgment proceedings is Plaintiff's excessive force claim brought against each Defendant in his individual capacity. To the extent Plaintiff argues about his dismissed deliberate indifference claim in his briefing, the argument is not relevant to the current motions and will not be considered. The Court now turns its attention to the facts relevant to the excessive force claim.

## II. FACTS

On March 15, 2014, Plaintiff was an inmate at TSP, and Defendants Maddox and Creamer were correctional officers tasked with escorting Plaintiff during a portion of his transfer from Building G to Building E. (Doc. no. 52, Ex. A, Shaffer Dep. 21, 48; Ex. B, Maddox Aff. ¶ 2.) Defendants assert they were escorting Plaintiff to the shower. (Maddox Aff. ¶ 2 and Attach. B, pp. 3, 10; doc. no. 40, Answer, p. 4.) Plaintiff maintains he was supposed to be taken directly to his newly assigned cell in Building E. (Shaffer Dep. 53, 59-60, 66-67.)

During the escort, Plaintiff, who had his hands cuffed behind him, repeatedly dropped to his knees and refused to move as instructed by Defendants. (Maddox Aff. ¶ 3; doc. no. 60, Shaffer Aff. ¶¶ 3, 4; Shaffer Dep. 51, 67.) Plaintiff also attempted to use his legs to hook

himself to the iron railing which runs along the second floor dormitory walkway on which Plaintiff was located. (Maddox Aff. ¶ 3; Shaffer Aff. ¶¶ 4, 6.) Plaintiff maintains he resisted moving because he was cuffed with hands behind his back and Defendants would not put him in his newly assigned cell, were calling him derogatory names, and threatening to beat him. (Shaffer Aff. ¶¶ 3-4; Shaffer Dep. 63, 66, 69 & Ex. 1, Movement History.)

Defendants applied force to bring Plaintiff to his feet and dislodge him from the iron railing. (Maddox Aff. ¶ 3.) Defendants describe the type of force used as "minimal" and involving pulling Plaintiff's feet away from the railing. (Id.) Plaintiff maintains Defendant Creamer kicked or "stomped" Plaintiff's legs several times, as many as eight to ten, in the process of removing him from the railing. (Shaffer Dep. 29, 30, 72-76; Shaffer Aff. ¶ 5.) In his deposition, Plaintiff initially characterized the force as stomping. (Shaffer Dep. 29, 30.) After being informed the incident was on videotape and extensive questioning about his alleged injuries, Plaintiff clarified his definition of "stomping" as "kicks using of the legs to execute contact against my skin and my legs." (Id. at 29, 71-73.) As Plaintiff came back onto the walkway after Defendants dislodged him from the railing, he ran into Defendant Maddox, resulting in an accidental discharge of Defendant Maddox's OC spray. (Shaffer Dep. 53; Shaffer Aff. ¶ 6; Maddox Aff. ¶ 3.)

Plaintiff wrote a one-sentence grievance statement on March 15, 2014 in which he described his escort as, "8th Amendment Violation – cruel and unusual treatment with physical violence, its on E-2 camera the entire act of staff assaulting me." (Doc. no. 27-2, p. 42; Shaffer Aff. ¶ 11.) On March 19, 2014, Plaintiff wrote a sworn statement about his March 15th escort, and that statement said nothing about being kicked or stomped by either

3

Defendant and stated Defendant Maddox "got me help and cleaned and returned me to [my cell] safely." (Maddox Aff., Attach. B, pp. 8-9; Shaffer Dep. 53, 60-61.) A medical report was also prepared on March 19th which states Plaintiff "denies injury of any kind" and notes no injuries, marks, bruises, or redness on Plaintiff. (Maddox Aff., Attach. B, pp. 5-7.) Plaintiff does not have any medical records to contradict the medical report prepared March 19th, but he disputes the conclusions reported because he states the examination was conducted through holes in his cell door the size of a pencil hole. (Shaffer Dep. 87-89.)

Plaintiff maintains he had scrapes and scratches from his encounter but concedes they "weren't that deep." (Shaffer Dep. 87.) He also states he has muscle and skeletal damage from the use of force. (Id. at 10.) Plaintiff asserts he had back pain and joint soreness that required him to take Tylenol, but he also concedes that prior to this event, he had medical profiles for a bottom bunk and restricted lifting since 2008 based on back and neck pain caused by car wrecks he had prior to his incarceration. (Shaffer Dep. 26-36; doc. no. 12, pp. 7-8.) He has also sworn by affidavit in this case that on April 8, 2014 he pulled a muscle in his back getting off his bed, which resulted in an increased dose of 800 mg per day of Ibuprofen and a medical profile for no lifting. (Doc. no. 12, p. 9.)

A video of the use of force incident was submitted along with Defendants' motion for summary judgment. (Maddox Aff., Attach. A ("DVD").) Although there is no audio, the video does provide a clear and unobstructed view of the events in question. As the video starts, Plaintiff is walking in front of Defendants with his hands cuffed behind him and begins to ascend a set of stairs to the second floor dormitory walkway. (DVD 16:57.27-.32.) At the same time, a third correctional officer is visible pointing toward and then holding open

4

a door on the first floor of the dormitory on the opposite side Plaintiff and Defendants entered. (DVD 16:57.28-.34.) Once Plaintiff reaches one stair short of the landing at the top of the stairs, he turns back towards Defendants, who are standing part way up the stairs and motioning him to come back to them. (DVD 16:57.36-.48.) Plaintiff does not return and instead steps onto the landing and drops to his knees while Defendants and the other officer present on the dormitory floor continue to motion Plaintiff toward the first floor on the other side of the dormitory. (DVD 16:57.50-.55.)

Plaintiff is on his knees, inching away from Defendants, so they begin to walk up the stairs toward Plaintiff, who then gets up and walks to the opposite end of the walkway. (DVD 16:57.56-58.19.) As Defendants catch up to Plaintiff, he again goes to his knees, at which point Defendants pick up Plaintiff under each of his arms. (DVD 16:58.20-.29.) Plaintiff then starts dragging and kicking out his feet. (DVD 16:58.30-.36.) As the three men round the corner of the walkway to head back toward the location Defendants and the third officer had initially indicated, Plaintiff and Defendants become tangled at the feet. (DVD 16:58.37-.43.) Plaintiff then throws a leg over the iron railing and continues to struggle with Defendants. (DVD 16:58.44.) One kick is administered to the lower portion of Plaintiff's leg still on the dormitory walkway, causing Plaintiff to lose his purchase and allowing Defendants to pull Plaintiff back off the railing. (DVD 16:58.46.-48.) All three men regain their footing, and they continue down the dormitory walkway. (DVD 16:58.49-.58.) All three then walk down the stairs, toward an open door on the side of the dormitory Defendants had tried to direct Plaintiff towards at the beginning of the video. (DVD 16:58.59- 16:59.14.)

5

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by

6

affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.      Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment is little more than a recitation of his claims and an attempt to re-introduce the deliberate indifference claim already dismissed by Judge Bowen. (See doc. no. 48.) First, in contravention of Local Rule 56.1, there is no brief in support of the motion and no separate, short, and concise statement of the material facts – supported by citation to the record – to which Plaintiff contends there is no genuine dispute to be tried. Moreover, there is no legal argument. A motion may be summarily denied for failure to comply with the Court's Local Rules. Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979)[1] (holding that failure to comply with the Local Rules may result in summary denial of motion).

Second, Plaintiff appears to concede that he is not entitled to summary judgment when he asks that a jury be given the chance to evaluate the events depicted in the video. (Doc. no. 48, p. 3.) However, for Plaintiff to prevail on his own motion at the summary judgment stage, he must show there is no "genuine dispute as to any material fact" to establish he is entitled to judgment as a matter of law. Moton v. Cowart, 631 F.3d 1337,

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

7

1341 (11th Cir. 2011). Thus, by definition, if Plaintiff is relying on the prospect of a jury to evaluate the merits of his case, he is not entitled to summary judgment.

For these reasons and the reasons set forth below as to why Defendants are entitled to summary judgment, Plaintiff's motion for summary judgment should be **DENIED**. (Doc. no. 48.)

### C. Defendants' Motion for Summary Judgment

Defendants contend they are entitled to summary judgment for three reasons: (1) Plaintiff cannot satisfy the objective and subjective components of an Eighth Amendment excessive force claim; (2) they are entitled to the protection of qualified immunity; and (3) Plaintiff has only a claim for compensatory damages, which is barred because he did not sustain more than *de minimis* physical injury. Plaintiff opposes the motion based on allegations of Defendants offering perjured or misstated testimony and an assertion that he was entitled to resist Defendants' attempts to move him because they were threatening to take him somewhere other than his newly assigned cell and beat him. (Doc. nos. 61-63.) The Court has reviewed the record and relies only on indisputable facts verified in the record to make its decision.[2]

#### 1. Qualified Immunity Does Not Apply, and the Type of Damages Sought Is Not Dispositive.

The Court quickly dispenses with Defendants' last two arguments first. Defendants argue they are entitled to qualified immunity. (Doc. no. 52-2, pp. 7-9.) If the Court were to

---

[2]Plaintiff has also filed motions requesting the imposition of sanctions against Defendants based on his accusation of misconduct in the submission of their summary judgment papers. The Court addresses those motions in a separate, simultaneously entered Order.

8

find Defendants' application of force on March 15, 2014 was violative of the Eighth Amendment, a qualified immunity defense would not be available. Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). Use of excessive force is clearly established to be a violation of the Constitution. Hudson v. McMillian, 503 U.S. 1, 7 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986). Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301-02.

Defendants also argue that Plaintiff has claimed only compensatory damages, and even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), ("PLRA"), because his injuries are *de minimis*. (Doc. no. 52-2, pp. 9-11.) With a conclusory sentence in a footnote, Defendants then dismiss the notion Plaintiff seeks nominal damages. (Id. at 9 n.4)

Section § 1997e(e) provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Thus, the PLRA prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). To survive application of the § 1997e(e) bar, the physical injury must be more than *de minimis*. Id. at 1213. "The meaning of the phrase 'greater than de minimis,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).

9

Here, Plaintiff alleges more than mental or emotional injury. He has claimed actual physical injury. As aptly explained by another court, "Plaintiff is also seeking damages for the *actual* physical injuries he received from the alleged excessive use of force. This Court can find no authority limiting a prisoner's damages for the *actual* physical injury he may have suffered, even if the court determines that the injury was *de minimis*." Nix v. Carter, No. 5:10-cv-256, 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013). As to nominal damages, a failure to expressly request them is not necessarily fatal to awarding such damages, even if a prisoner plaintiff is unable to establish actual injury for compensatory damages. Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) (remanding to trial court for consideration of whether prisoner plaintiff could recover nominal damages, citing Fed. R. Civ. P. 54(d), despite failure to request that relief).

Thus, the Court rejects Defendants' argument that the issue of the type of damages expressly requested by Plaintiff is dispositive of the case. In any event, as discussed below, Defendants are entitled to summary judgment on the substantive merits of the excessive force claim, so the issue of damages is ultimately moot.

### 2. Overview of the Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id.

*De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10. Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley, 475 U.S. at 319. That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to

11

> the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6. For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### 3. Defendants Are Entitled to Summary Judgment Because They Applied Minimal Force In a Good-Faith Effort to Restore Order, Not Maliciously and Sadistically to Cause Harm.

Defendants have submitted a videotape recording of the entirety of the events forming the basis for Plaintiff's claim. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Stated otherwise, the Court

should accept the video's depiction of events instead of Plaintiff's where it "obviously contradicts Plaintiff's version of the facts." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010). As discussed in detail below, Plaintiff's version of events is simply not supported by the visual depiction of the March 15th escort. Rather, the record supports but one conclusion: this is "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." Whitley, 475 U.S. at 322.

Plaintiff claims he was kicked anywhere from eight to ten times with such force that he received bruises and scrapes, that "weren't that deep," on his thighs, knees, calves, and all over the front, back, and sides of legs, running from the top to bottom and front to back of his legs. (Shaffer Dep. 72, 75, 87.) However, the DVD refutes Plaintiff's contentions concerning the number of times and force with which Defendants handled Plaintiff during the escort. The DVD clearly shows when Plaintiff entered the E Building and started up to the second floor dormitory walkway, Defendants motioned him back. (DVD 16:57.27-.34.) He refused, went to his knees, and started inching away from them. When Defendants started up the stairs toward Plaintiff, he stood up and continued walking away from them and toward the back of the dormitory walkway. (DVD 16:57.50-:58.29.) When Defendants caught up to him, he again went to his knees, at which time Defendants put their arms under Plaintiff's to lift him up. (DVD 16:58.20-.29.) Once up, Plaintiff began to resist moving by kicking out and dragging his feet. (DVD 16:58.30-.36.)

Once Defendants had their hands under Plaintiff's arms and began moving him, the video shows Defendants and Plaintiff did get tangled because of Plaintiff's flailing. (DVD 16:58.37-.43.) When Plaintiff hooked his leg over the railing, the video shows one swift,

13

low-placed kick to Plaintiff's foot still on the dormitory walkway, which caused Plaintiff to lose his purchase and allowed Defendants to pull Plaintiff back to safety on the walkway.[3] (DVD 16:58.46.-48.) All three men regain their footing, and they continue down the dormitory walkway. (DVD 16:58.49-.58.) All three then walk down the stairs, toward an open door on the side of the dormitory Defendants had tried to direct Plaintiff towards at the beginning of the video. (DVD 16:58.59-16:59.14.)

There simply was no kicking or "stomping" of the number and magnitude alleged by Plaintiff. Even if the Court presumes for the sake of argument that some type of kicking occurred when Plaintiff's flailing caused the entanglement of feet, there is no evidence of the use of force of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 10. The escort continued quickly, without hesitation or delay, and Plaintiff, once restored to his feet, moved along without any visible impediment to walking. The video clearly shows two officers trying to restore order when a prisoner, though handcuffed, created a disturbance and endangered his own safety by trying to hook himself through a second floor railing.

Furthermore, consideration of the multiple factors used to evaluate the subjective component of an excessive force claim shows Defendants are entitled to summary judgment.

---

[3]Plaintiff's allegations concerning the accidental OC discharge *he* caused when he ran into Defendant Maddox as he was pulled back from the railing have no relevance to the Court's summary judgment analysis. There is no deliberate indifference claim remaining in this case, and there is no allegation that either Defendant purposefully sprayed Plaintiff as any type of show of force. Cf. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (U.S. 2015) (recognizing accidental discharge Taser or unintentional trip and fall onto a prisoner, causing harm, cannot form basis for successful excessive force claim). Indeed, Plaintiff testified at his deposition that he caused the OC spray to discharge when his hip hit Defendant Maddox. (Shaffer Dep. 53.) Thus, the discharge of OC spray is a non-factor in the Court's analysis.

There was a need to apply force to respond to the reasonably perceived threat caused by Plaintiff's resistance to moving and attempting to hook himself through a second floor railing. See Hudson, 503 U.S. at 7. Other than entanglement of feet caused by Plaintiff's flailing while Defendants were trying to move him, there was one swift, low-placed kick to Plaintiff's foot in order to gain control and pull him back from the railing. That was a tempered response of minimal force to get Plaintiff off the railing. See id.

Although somewhat of a closer call because of the lack of a contemporaneous medical examination, the extent of Plaintiff's injuries does not support a finding of excessive force. On this point, viewing the evidence most favorable to Plaintiff, the Court assumes Plaintiff had some scratches, bruises, back pain, and joint soreness that required him to take Tylenol after the escort and to update a medical profile for lifting he admittedly already had based on back and neck pain caused by car wrecks he had prior to his incarceration. (Shaffer Dep. 10, 26-36, 87; doc. no. 12, pp. 8-9.) The conclusion there was minimal injury is supported by Plaintiff's admission of receiving scrapes that were not that deep and his sworn testimony by affidavit that he received the same treatment of increased dosage of non-prescription pain medication and no lifting profile after he pulled a muscle on April 8, 2014. (Shaffer Dep. 87; doc. no. 12, p. 9.) Thus, after the escort, Plaintiff either received no greater treatment than what he got for pulling a muscle, or the Tylenol and lifting restrictions were not even provided in response to the events of the escort. Under either scenario, the evidence shows the extent of Plaintiff's injury was minimal.

There is a dispute as to why Plaintiff resisted moving. Plaintiff claims Defendants were threatening to take him to an undisclosed location to beat him. Defendants assert they

15

were simply trying to take Plaintiff to the shower. This dispute does not prevent an award of summary judgment because it is not material to an outcome determinative issue. See McCormick, 333 F.3d at 1244.

The Court is aware threatening language may be considered as part of a totality of the circumstances relevant to determining a defendant's subjective state of mind. Bozeman v. Orum, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005), *abrogated on other grounds*, Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (U.S. 2015). Here, however, the allegations of threatening language are not material to the Court's analysis because, as all parties agree, Plaintiff was never taken to an undisclosed location and was never beaten based on the derogatory threats allegedly directed to him. The Court's focus is on what force was applied when Plaintiff became resistant and non-compliant during the escort, and Defendants had to restore order and stop an immediate safety threat. Even if the Court assumes for the sake of argument Plaintiff was fearful of threats that may have been spoken to him, no force was applied until he refused to move and then hooked his leg through the railing.[4] Thus, the Court focuses on the force applied to restore order and protect Plaintiff's safety.

Plaintiff's cases cited in opposition to Defendants' motion are inapposite. (Doc. no. 62, p. 12.) First, the cases do not rely on undisputed video evidence as is present here. See, e.g., Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (summary judgment not

---

[4]As explained in the separately entered Order, because the Court assumes for the sake of argument Plaintiff was fearful of Defendants, the absence of an affidavit from a fellow inmate who may have heard Plaintiff asking to be put in a cell rather than taken someplace else makes no difference to the Court's analysis.

appropriate where trial court had "square, head on dispute of material facts" created by the submission of competing affidavits and sworn statements).

Second, one is a non-binding case from the Eighth Circuit with easily distinguished facts because there, the prisoner asserted he did not display any intentionally disobedient or threatening behavior, was sprayed with mace without warning, thrown to the floor, and handcuffed. Treats v. Morgan, 308 F.3d 868 (8th Cir. 2002). Here, Plaintiff admitted to resisting Defendants' attempts to direct him to a different location than he believed he was going, admitted to hooking a leg over the second floor railing, and had an opportunity to comply with Defendants' attempt to get Plaintiff to walk under his own power.

Davis v. Locke, 936 F.2d 1208 (11th Cir. 1991), is similarly unavailing because in that case an escaped inmate who had been recaptured, chained, detained in a cage, threatened "to be taught a lesson" by officers, and no longer posed a threat was purposefully pulled from the cage and caused to fall to the ground. A jury concluded the officers intended to punish the prisoner for his escape and did so by the use of excessive force. Davis, 936 at 1212. Here, at best, there is a dispute that Defendants planned to beat Plaintiff, but there is no evidence the threatened beating occurred. Rather, Defendants had to apply force when Plaintiff resisted moving and posed a safety threat by hooking a leg through a second floor railing.

In sum, the DVD completely contradicts Plaintiff's assertion of multiple, forceful kicks. The acts of lifting Plaintiff to his feet and then dislodging him from the second floor railing is quick and decisive, with no evidence of gratuitous manhandling, kicking, stomping, or the like. A reasonable jury would not make such a determination. There is no evidence of

the extreme behavior Plaintiff alleges.  As Plaintiff can satisfy neither the objective nor subjective components of an Eighth Amendment excessive force claim, Defendants are entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 48), Defendants' motion for summary judgment be **GRANTED** (doc. no. 52), a final judgment be entered in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 27th day of July, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA